Statement of the Case.
NICHOLLS,-J.
The plaintiffs alleged that they were taxpayers and residents of New Orleans, and owners of certain property which they described.
That the property of petitioners was jointly worth over $3,000; the value being chiefly owing to the fact that there were no obstructions of any kind intervening between the said properties and the water of .Lake Pontehartrain.
That J. J. Noonan and S. W. Higginbottom, who are likewise residents of this city, had begun the construction on the lake near the shore, and in front of petitioners’ property, of a clubhouse, or pleasure camp, and, notwithstanding that they were not the owners of any land, or vested with any authority to build the said place, they were constructing, and would continue to construct (petitioners having been informed by them of the building), to the irreparable and great injury of petitioners. That the building of a clubhouse or pleasure camp at the said place was a public nuisance, closing off the view of the lake to petitioners, as well as being a detriment to the Pontehartrain public school, which adjoined petitioners’ property. That the same will destroy the value of all the property in the square hounded by Touro and Frenchman streets facing the lake shore as residential property. That writ of injunction was necessary and material in the premises, as petitioners had no other remedy at law.
In view of the premises, they prayed that, the annexed affidavit and bond considered, upon security being furnished in the amount fixed by the court, a writ of injunction issue herein enjoining and restraining the said J, J. Noonan and S. W. Higginbottom, or any other parties in their employ from further building or constructing the said clubhouse- or pleasure camp, and that they be cited and served with a copy of this petition; that after due proceedings had petitioners have judgment in their favor maintaining and perpetuating the said injunction, and commanding the defendant to remove any and all obstructions placed by them on the lake before, or near petitioners’ property. Petitioners; further prayed for all cost, as well as all orders of relief necessary in the premises.
This petition was verified as to its allegations by the affidavit issued.
Defendants excepted to the petition on the-grounds that:
First, that the same was vague, general, and indefinite and not such as to permit exceptors safely to answer.
Second, that the same set forth no cause of action.
In view of the premises, exceptors prayed that these exceptions be maintained, and that plaintiffs’ petition be dismissed at their cost, and for general relief.
Plaintiffs filed an amended and supplemental petition, in which, in addition to-their original allegations, they averred that, defendants were causing to be erected, and about to erect, a structure, dwelling, or clubhouse on the lake shore in front of the property of petitioners or adjacent thereto, below the high-water mark, and had driven piling in the soil for the support of the said clubhouse, dwelling, or structure.
That the said defendants were without any right, or warrant in law to cause any structure of any nature or any obstruction of any character to be erected in or upon the said lake, without the consent or authority of the- *97 municipal or state authorities, which said authority petitioners specially averred the said defendants had not in any manner obtained; but, on the contrary, the said defendants were causing the said structure, or building, or dwelling to be erected in defiance of the municipal or state authorities, and that the said municipal or state authorities had no right whatever, even if the said defendants had obtained a permit for the erection of said building or structure, to grant the same, petitioners being entitled, as citizens of the state and city, to the free and unobstructed use of the said lake, and particularly the place where the said building or structure was about to be erected.
That the said building, if erected and occupied for the purposes and uses contemplated by the defendants, as exemplified by the statement of counsel for the defendants, in open court, then the said building would contain toilets, from which all sorts of fecal matter and other refuse would be thrown into the lake, and would necessarily be washed upon the shore and become dangerous to the public health, which would constitute a nuisance, from which the said defendants should be enjoined as originally prayed for. That the buildings contemplated by the defendants, if placed upon the pilings driven by the said defendants, for the support of the said structure, and erected as contemplated, in that event the storms which were of annual occurrence along the lake shore would cause the said buildings and pilings to become dilapidated, loose and dangerous, and the same, when washed upon the shore, would cause irreparable injury to the property of the petitioners and would be a constant menace to their lives and property.
In view of the premises and annexed affidavits being considered, petitioners prayed that their amended and supplemental petition be filed and served on the defendants; that there be judgment in favor of petitioners and against the said defendants, perpetuating the injunction herein sued out, and ordering and decreeing the removal of the said obstruction placed by the defendants upon the said lake, as aforesaid; and that the writs of injunction herein sued out be perpetuated, reserving to petitioners all their rights and actions in damages, as under the law they may be entitled, and for all necessary orders, costs, and for general relief.
The district court overruled defendants’ exceptions.
Defendants answered, pleading first the general issue. Further ■ answering, they averred that the construction they were erecting on the bottom of the lake shore was a small camp of the nature of dozens of others built along in the shallow water of Lake Pontchartrain, and which had been built from time out of mind.
That the purpose of this camp was to give respondents a place where they could carry their wives and children on Sundays, and spend the day out on the water at a cost within their means; they being men of limited means, making their living by daily work. That this erection was not in front of the properties owned by the petitioners and would not, in any manner, interfere with any of the legal rights of petitioners. That the allegations of the petitioners, declaring that the building to be erected by respondents would constitute a nuisance for the reasons stated in the supplemental petition, were so baseless and far fetched as to be absurd. Respondents charged that the issuance of the injunction in this case was a gross abuse of the processes of the court.
On trial the district court dissolved and set aside the injunction and dismissed plaintiffs’ demand. Plaintiffs appealed.
Opinion.
The defendants do not pretend that they are owners of the property on which they are constructing the-wharf and building of *99 which the plaintiffs complain in the bed of the lake, or to have the consent of either the state or municipal authorities to place it there, or that of any one else. Their defense rests principally upon the want of legal right or interest in the plaintiffs to question their action. They maintain that, so long as the owners of the property, whether city or state, take no 'adverse action in the premises, the plaintiffs have no right to 1 interfere.
The district judge assigned no reasons for his ruling beyond the stereotyped assigned ground that it was “by virtue of the law and the evidence.” We have therefore to deal with it conjecturally. We do not think that the court intended to hold that, if the acts complained of were, in fact, of such character as to causé the plaintiffs a special injury, one separate and distinct or more direct than that suffered by the public at large, they would have no legal right of themselves to apply to the court for relief, but would have to depend upon action taken or to be taken by the municipal or state authorities.
It was testified, on the trial of the case, that parties desiring to place structures such as those being constructed by the defendants, on the bed of the lake, were required to obtain a permit so to do from the city authorities.
Defendants deny that the work which is in process of construction by themselves has, in fact, injured the plaintiffs or their property, or would be likely to injure them specially or to any extent' thereafter. They maintain that, if they now suffer, or will hereafter suffer, the special injuries which they make the basis of their action, they will equally suffer, independently of their (defendants’) acts, from those of other parties having similar structures in the neighborhood, and from the additional fact resulting from the situation of their properties upon the front of a lake 20 or more miles wide and 40 long, whose waters in times of storm throw up against its shore throughout its entire length and in whatever direction the wind may blow, and cast them, logs, bathhouses, wharves, and whatever other objects may be detached from their foundations. They maintain that the abatement of their particular structure would leave the defendants in the same condition which they would be were it continued. They made the same defense as to the claim of the deposit near their properties of offensive matter prejudicial to health and unbearable to comfort and pleasure.
They deny the fact of such deposit, and assert that; if such deposit did exist, it was not to such an extent as would cause any great discomfort or affect health.
It is claimed by plaintiffs that the testimony shows that, by reason of the ordinary direction of the wind in times of storm, and the situation of the properties of the defendants, the latter are specially likely to have the logs, the detached bathhouses, and wharves Which are driven about at the mercy of the storm thrown upon them and likewise to have offensive matter thrown upon or near their residences. That it was shown that by reason of, the storms in the last few years, with the resulting destruction of the bathhouses and wharves already constructed in the bed of the lake, but some 100 feet further removed from plaintiffs’ properties, the latter had been injured to a very considerable extent from the débris being thrown against and upon them.
It is very questionable, under the evidence, whether the constructions placed in the bed of the lake by the plaintiffs are built sufficiently strong or high enough above the water to withstand any severe storm. It may be that the plaintiffs, under such circumstances, have shown sufficient special interest and right to protection to authorize them to demand that the work of the defendants should be held in abeyance until they should have *101 obtained a permit from the constituted authorities, state or municipal, after an investigation by them into the facts, and the condition of things had been fixed between them-, selves and the authorities.
Whether storms will occur, and what their degree of violence and effect will be, are, of course, matters which will be'purely dependent upon such facts as may hereafter develop. Should injury in fact result, the exact extent of that injury through the structure of the defendants is, at present, impossible to foreshadow.
Plaintiffs do not attempt to fix, nor are they in a position to fix, the exact amount of the damage which they may suffer from it. They allege the value of their combined prop- ■ erties to be $3,500, and assert that the building of the constructions will destroy the value of all the property in the square bounded by Touro and Frenchman streets, facing the lake shore; but that is a very indefinite, sweeping assertion, obviously incorrect as to accuracy. The district court evidently had jurisdiction of the subject-matter. It dissolved plaintiffs’ injunction and dismissed the suit. It may be that the court erred, but the matter in dispute has not been alleged nor shown by affidavit or evidence to be as to amount and’ value such as would authorize this court to reverse its judgment, even if it were wrong.
We do not think we have jurisdiction to entertain this appeal.
For that reason, it is hereby ordered, adjudged, and decreed that this case be transferred to the Court of Appeal, parish of Orleans (for want of jurisdiction of the Supreme Court to entertain the appeal herein), under Statute No. 56, p. 135, of 1904, provided that, before said transfer is made, the appellants or their attorney of. record shall make oath, as required by that statute, aifd, should appellants fail to file the said affidavit required by said statute within 10 days from the rendition of this order, the appeal to this court herein shall be considered dismissed; the costs in this court of this appeal- to be paid by appellants, in either event.