150 So.2d 688

**CONTINENTAL BANK & TRUST CO., Receiver,**

v.

**ALABAMA GENERAL INSURANCE CO. et al.**

**3 Div. 4.**

Supreme Court of Alabama.

Feb. 28, 1963.

Steiner, Crum & Baker and Sam Rice
Baker, Montgomery, for appellee.

Martin, Vogtle, Balch, Bingham & Haw-
thorne and J. Paul Lowery, Montgomery,
for appellant.

SIMPSON, Justice.

This appeal arises out of proceedings held in connection with the allowance and payment· of claims presented to Louis G. Green, as Receiver of Alabama General Insurance Company. The outcome of this appeal will not affect the interests of appellee, Louis G. Green, except to determine to whom this claim should be paid, either to appellant, Continental Bank & Trust Company, as Receiver, or to appellee, American Guaranty and Liability Insurance Company.

'Appellant had obtained a judgment against Leslie L. Gwaltney, individually, and as Superintendent of Insurance for the State of Alabama in the sum of $94,890.00 plus costs in the United States District Court (N.D. Alabama) on March 15, 1960. This judgment was for the wrongful release of certain U. S. Government Bonds on deposit with the State Department of Insurance and belonging to Royal American Insurance Company of Huntsville, Alabama.

Subsequently, appellant in a separate suit obtained and collected a judgment for $21,666.67 from appellee, American Guaranty and Liability Insurance Company, based upon Gwaltney's statutory fidelity bond as Superintendent of Insurance.

Appellant (Continental Bank) and appellee (American Guaranty) sought to be subrogated to appellant's rights by virtue of §·101, Title 9, Code of Ala. 1940. Appel-

lant's claim was based on its judgment in the amount of $94,890.00 obtained against Gwaltney. The lower court decreed that appellee (American Guaranty) by virtue of having paid the $21,666.67 to appellant (Continental Bank) had become subrogated to appellant's rights and interest in the judgment against Gwaltney to the amount expended.

It appeared from the evidence that appellant was paid $15,000.00 by one Robert Bell and Carl A. Morring, Jr., as officials of Royal American Insurance Company in consideration of a covenant not to sue them on account of any indebtedness of Royal American to appellant (Continental Bank). This was done under the supervision of a federal court.

The Special Master allowed appellant's claim only to the amount of $50,000.00 against the Receiver, based upon its judgment against Gwaltney. However, appellant reserved the right to proceed against others to collect its judgment, although Louis Green, as Receiver would be released. Gwaltney was not released by this allowance of claim.

Appellant's position is that before appellee (American Guaranty) should be entitled to subrogation on the judgment, the full amount of its judgment against Gwaltney must be paid, and that appellee has failed to prove payment in full of appellant's judgment. Also, that subrogation is not to be enforced where the rights of the creditor will be prejudiced, and the lower court by allowing appellee (American Guaranty) to be subrogated to appellant's rights denied appellant the right to further collect on the unpaid judgment.

Appellee (American Guaranty) takes the position that having paid the full amount of the judgment against it, $21,666.67, and all elements of said § 101 being apparent, the lower court ruled correctly in allowing subrogation. In the alternative appellee (American Guaranty) asks for *pro tanto* subrogation in sharing the dividends of Alabama General with appellant.

The basic conflict between the parties is best understood when it is kept in mind that there are two judgments, i. e., one against Gwaltney for $94,890.00 unpaid in part, the other against appellee (American Guaranty) as surety for Gwaltney in the amount of $21,666.67 in favor of appellant which is fully paid. Appellee (American Guaranty) has paid the full amount of its obligation but this is not the full amount due appellant on its judgment against Gwaltney.

The issue may therefore be stated, viz.: Where a surety has paid the full amount of its obligation, being liable for only a part of a larger obligation which remains unsatisfied, can the surety be subrogated by virtue of § 101, supra, to the rights of the creditor to whom it made payment?

Our research has failed to reveal an Alabama decision directly in point. However, a search of other jurisdictions has been more fruitful. The weight of authority and the better reasoned cases respond to the issue in the negative. Analogous cases in Alabama lead us to the same conclusion.

Subrogation is not a common law concept but was adopted from the civil law. Our jurisdiction recognizes two basic types of subrogation: "Legal subrogation", arising by operation of law where a surety having a legal liability pays a claim primarily owing by his principal, and "Conventional subrogation", grounded upon a lawful contract between the parties. See City of Birmingham v. Trammel, 267 Ala. 245, 101 So.2d 259. We are here concerned with "legal subrogation".

Section 101, supra, provides:

"Whenever a judgment is obtained by a creditor on a demand to which there are one or more sureties, the sureties may pay such demand; and the same shall by operation of law be transferred to the surety or sureties paying or satisfying such demand, who shall have all the liens or equities of such judgment or decree and of the debt or claim on which the same is founded, and the plaintiff in the judgment, his agent, or attorney of record, when the payment is made, must assign such judgment to the surety or sureties paying the money, who may collect the same, with interests and costs, in the name of the plaintiff, for their use, and may assert, in law or in equity, any lien or right against the principal debtor, which the plaintiff could have asserted if the debt had not been paid."

Subrogation is made available in § 101 to co-sureties concurrently liable to suit with the principal, who have been sued and have judgments rendered against them. Peterson v. Drennen Motor Car Co., 256 Ala. 99, 53 So.2d 375. It is available both at law or in equity, but in order to obtain its benefits as to a judgment at law, the statute must be strictly observed. Holder v. Brooks, 261 Ala. 127, 73 So.2d 355.

It has been an oft-stated general rule that before subrogation can be enforced the whole debt must be paid because there should be no possibility of interference in the slightest degree with the rights of the creditor in collecting the full amount of the obligation. Atherton v. Tesch, 202 Ala. 448, 80 So. 832; National Union Fire Ins. Co. v. Price, 211 Ala. 155, 99 So. 848; Thompson v. Menefee, 211 Ala. 168, 100 So. 107; Corinth State Bank v. First Nat. Bank of Florence, 217 Ala. 632, 117 So. 216; Montgomery v. Wadsworth, 226 Ala. 667, 148 So. 419; Pickens County v. Johnson, 227 Ala. 190, 149 So. 252; Groom v. Federal Land Bank of New Orleans, 240 Ala. 335, 199 So. 237; Federal Land Bank v. Henderson, Black & Merrill Co., 253 Ala. 54, 42 So.2d 829.

True, the debt may be satisfied *from any source* and subrogation allowed the surety (Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220); but here that rule has no application as the record is barren of proof that the full amount of appellant's judgment has been satisfied.

In National Surety Co. v. Salt Lake County (8th Cir.1925) 5 F.2d 34, the court held that sureties on a bond of a defaulting treasurer, who had paid the full amount of their obligation, which was not the full amount of the defalcation, were not entitled to subrogation. This seems to be the established federal rule. See Maryland Casualty Co. v. Fouts (4th Cir.1926) 11 F. 2d 71, wherein it was held that a surety on the bond of a bank which is a state depository, which contracts to pay upon demand all money deposited in the bank by the state, is not entitled to subrogation to the rights of the state upon payment of the full obligation of its bond, leaving some portion of the state's deposit unpaid, so as to share in dividends out of the bank's funds before claims of the state are fully satisfied. See 59 Fed.Dig., Subrogation, Key No. 28. This rule is also followed in Massachusetts, Westinghouse Electric Co. v. Fidelity & D. Co., 251 Mass. 418, 146 N.E. 711; applied to a surety on an attachment bond with a limitation of liability, it was held that although the surety had paid the full amount of its liability, there could be no subrogation because the judgment against the principal was for a greater sum and was unsatisfied. (See also Sheldon on Subrogation, § 127; and for an extensive collection of the cases, 9 A.L.R. 1596; 32 A.L.R. 568; 46 A.L.R. 857; 53 A.L.R. 304; 91 A.L.R. 855.) In the absence of a definitive expression by this Court on the point, we think it sound to follow the out-of-state authorities and analogous Alabama cases, supra. It appears to be but a logical extension of the general rule already prevailing in our jurisdiction.

■ The universal reasoning behind the rule is that since subrogation is of an equitable nature, the surety should not be permitted to take away from the obligee, to his prejudice, rights or securities in which he is still beneficially interested.

■ We have held that *pro tanto* subrogation is allowed a surety making only a part payment on a greater obligation but this is allowed as an exception to the rule only when the reason for the rule does not exist, i. e., an absence of prejudice or possibility thereof in the collection of the principal claim. Federal Land Bank v. Henderson, Black & Merrill Co., supra; Corinth State Bank v. First Nat. Bank of Florence, supra. Here, the reason for the rule is most evident. Appellee (American Guaranty) as surety was allowed to come in and share ahead of appellant who had a prior judgment against a debtor and had been only partially paid by appellee. So, appellee was allowed a prior claim ahead of appellant in the presently available dividend, while being subrogated to appellant. This should not have been allowed. It would be inequitable to allow appellee (American Guaranty) to exclude appellant from the receivership dividends until appellant's surety debt was completely satisfied; this in order not to prejudice and embarrass appellant in the collection of its full claim.

· Against the contention that appellant filed a late claim and the chancellor was exercising broad discretion given him in allowing late claims in receiverships, it is manifest that both parties filed late claims against Alabama General and appellant had the earlier judgment, appellee being surety only on a part of that judgment. Appellant had the prior equity.

It follows that appellant having been prejudiced and hindered in the collection of its judgment, the case is due to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.